Argued and submitted May 26, 1995, affirmed June 26, 1996

Brenda BRANNON,
*Petitioner,*

*v.*

ADULT AND FAMILY SERVICES DIVISION,
*Respondent.*

(2-3501-BX6933-9; CA A85201)

920 P2d 161

Stephanie Striffler, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Claimant appeals from an order of a hearings officer that upheld a decision of the Adult and Family Services Division to deny claimant benefits under the Oregon Health Plan (OHP). Claimant argues that the rule under which her benefits were denied, OAR 461-135-1100(4),[1] is inconsistent with certain provisions of state and federal law. OAR 461-135-1100(4) denies OHP benefits to people who are denied cash benefits under the Aid to Dependent Children (ADC) program because they have been disqualified from that program for failure to participate in the Job Opportunities and Basic Skills (JOBS) program. We review for errors of law, ORS 183.482(8), and affirm the order of the hearings officer.

Before October 1992, both claimant and her daughter received ADC benefits. The ADC program provides financial assistance to needy dependent children and the relatives who live with and care for them. *See* 42 USC § 601. For certain people, receipt of ADC benefits is conditioned on participation in the JOBS program. *See* 42 USC § 602(a)(19)(G). That program requires qualified ADC recipients to participate in training and activities designed to help them attain economic self-sufficiency. *See* 42 USC §§ 681(a), 682(c)(1); *see also* OAR 461-190-161 (lists components of the JOBS program). Under certain conditions, qualified individuals may choose to continue education on their own instead of participating in the JOBS program. *See* 42 USC § 682(d)(1)(B). To qualify for that option, however, the individual must be able to complete the self-initiated education and training (SIT) program within 18 consecutive months from the date it is approved by the agency. OAR 461-190-191(2)(g).

In October 1992, when claimant's daughter reached one year of age, claimant lost her exemption from participation in the JOBS program. She chose not to participate in that program because she wanted to continue to attend school full time to become a registered nurse. That course of study did not qualify as a SIT alternative to the JOBS program, however, because claimant could not complete it

---

[1] At the time of claimant's hearing, the rule at issue was numbered OAR 461-135-1100(3). We will refer to the rule by its current number.

within 18 months. Therefore, claimant elected to be disqualified from ADC benefits and, in accordance with her decision, signed a voluntary agreement to reduce, close or deny her ADC benefits effective January 1993. As a result of her disqualification from ADC, claimant's financial needs were not considered in determining the amount of ADC cash assistance provided to her family.

ADC recipients are among the "categorically needy" for purposes of Medicaid coverage, which means that states are required to provide Medicaid benefits to them. 42 USC § 1396a(a)(10)(A)(I); 42 CFR § 435.110.[2] In January 1993, when claimant stopped receiving ADC benefits due to her JOBS disqualification, she lost her categorical eligibility to receive Medicaid benefits.[3]

On January 1, 1994, the OHP became effective.[4] Generally, the OHP seeks to provide universal access to a particular level of health care by enlarging the group of people eligible for Medicaid benefits and diminishing the scope of covered services.[5] In order to implement the plan, the state obtained waivers of certain federal requirements that are imposed on states that receive Medicaid grants. *See* Or Laws 1989, ch 836, § 9. Among others, the state sought and received a waiver of the income limitations imposed by 42

---

[2] 42 CFR § 435.110 provides, as relevant:

"(a) A Medicaid agency must provide Medicaid to individuals receiving [ADC].

"(b) For purposes of this section, an individual is receiving ADC if his needs are included in determining the amount of the [ADC] payment."

[3] *See* ORS 414.032; ORS 414.025(2) (1989) (since amended by Or Laws 1989, ch 836, § 19; Or Laws 1991, ch 66, § 6; Or Laws 1995, ch 343, § 42; Or Laws 1995, ch 807, § 1). Although ORS 414.025(2) had been amended before January 1993 as part of the OHP, federal waivers necessary to implement the OHP had not yet become effective.

[4] Relevant state statutes had been amended before January 1, 1994, but that is the date that the federal waivers necessary to implement the OHP became effective. *See* Letter from William Toby Jr., Acting Administrator, Department of Health and Human Services, to Kevin Concannon, Director, Oregon Department of Human Resources 1 (March 19, 1993).

[5] *See* Or Laws 1993, ch 815, § 1 (describing purpose); Or Laws 1989, ch 836, § 19 (adding ORS 414.025(2)(u), which increased the scope of "categorically needy" to include those with incomes below the federal poverty level); Or Laws 1989, ch 836, § 8(2) (authorizing a reduction in covered services if insufficient resources are available during a contract period to cover all services).

USC § 602(a)(17) and 42 CFR §§ 435.100, 435.602 to 435.832, because the poverty-level standard sought to be used to determine eligibility for benefits under the OHP is higher than the federal income standard that otherwise governs eligibility for Medicaid benefits. To extend eligibility to persons with incomes below the federal poverty level, the legislature amended ORS 414.025(2) by adding to the definition of "categorically needy" a resident whose family income is below the federal poverty level. *See* Or Laws 1989, ch 836, § 19.

On February 2, 1994, claimant requested an application for OHP benefits. She thereafter filed her application, and on February 25, 1994, the agency sent her a notice that her request for benefits had been denied pursuant to OAR 461-135-1100(4), which provides:

"A person who is disqualified for JOBS noncooperation is ineligible for OHP as follows:

"(a) During the minimum disqualification period if [ADC] benefits close because of the disqualification or after the disqualification period has started; or

"(b) Until they [*sic*] fulfill the requirements of rule 461-130-270, if a member of their [*sic*] OHP filing group is still receiving [ADC benefits]."

Claimant appealed the denial to an Adult and Family Services Division hearings officer, arguing that she was eligible for OHP benefits based on her income and that OAR 461-135-1100(4) impermissibly limits the population of persons eligible for OHP benefits in violation of certain provisions of state and federal law. Regarding state law, claimant argued that OAR 461-135-1100(4) is inconsistent with ORS 414.032 and ORS 414.025(2)(u). ORS 414.032 provides:

"Within the limits of funds available therefor, medical assistance shall be made available to persons who are categorically needy or medically needy."

At the time of claimant's hearing, ORS 414.025(2)(u) provided:

"(2) 'Categorically needy' means, insofar as funds are available for the category, a person who is a resident of this state and who:

"* * * * *

"(u)   Is not otherwise categorically needy and is not eligible for care under Title XVIII of the federal Social Security Act, but whose family income is less than the federal poverty level."

ORS 414.025(2)(u) (1993) (since amended by Or Laws 1995, ch 807, § 1). The hearings officer upheld the denial of benefits and concluded that,

"although ORS 414.025(2)(u), when coupled with ORS 414.032 would tend to grant medical assistance to those persons who are situated as claimant, to the extent that it did grant such assistance, it would be contrary to both the controlling federal regulations and the federal waiver."

On appeal, claimant raises three arguments: that OAR 461-135-1100(4) is inconsistent with ORS 414.025(2)(u) and ORS 414.032; that OAR 461-135-1100(4) imposes JOBS program disqualification penalties more stringent than are authorized by federal law; and that OAR 461-135-1100(4) violates Oregon Laws 1989, chapter 836, section 8. We address the last of those arguments first.

Oregon Laws 1989, chapter 836, section 8, provides in relevant part:

"1)   If insufficient resources are available during a contract period:

"a)   The population of eligible persons determined by law shall not be reduced.

"* * * * *

"(2)   In the circumstances described in subsection (1) of this section, reimbursement shall be adjusted by reducing the health services for the eligible population in the order of priority recommended by the Health Services Commission starting with the least important and progressing toward the most important."

■      Claimant's argument that OAR 461-135-1100(4) is inconsistent with Oregon Laws 1989, chapter 836, section 8, begs the question. That provision prohibits the agency from reducing "the population of eligible persons determined by law"; it does not describe the scope of the eligible population

in the first instance. The very issue in this case is whether claimant is within the population of eligible persons determined by law, that is, whether the rule denying claimant benefits is inconsistent with the relevant statutes. Because Oregon Laws 1989, chapter 836, section 8, does not shed any light on the scope of the eligible population, it cannot aid us in that inquiry.[6] Claimant's argument under that provision is not well taken.

■     We turn next to claimant's argument that, in denying OHP benefits to JOBS-disqualified individuals, OAR 461-135-1100(4) violates federal law by "extending the federal JOBS program cash disqualification penalty automatically, and without exception, to include medical benefits." We disagree. Federal law does not prohibit the termination of medical benefits as a consequence of becoming JOBS disqualified. *Cf.* 42 CFR § 435.113 (states are permitted to refuse Medicaid to people who do not qualify for ADC as long as the basis for ADC disqualification is not specifically prohibited by a provision of Medicaid law).

To support her argument that OAR 461-135-1100(4) violates federal law, claimant cites *Stenson v. Blum*, 476 F Supp 1331, 1339-41 (SDNY 1979), *aff'd* 628 F2d 1345 (2d Cir), *cert den* 449 US 855 (1980). That case held that a state could not terminate Medicaid benefits in response to termination of cash benefits that form a basis for categorical Medicaid eligibility without first considering whether the person is eligible for Medicaid benefits on some other basis. It is inapposite because claimant does not challenge the agency's termination of her medical benefits in January 1993; she challenges the agency's denial of her subsequent application for medical benefits in January 1994.

---

[6] In addition, there is no evidence in the record to support a contention that Oregon Laws 1989, chapter 836, section 8, applies here. That provision prescribes certain responses by the agency if there are "insufficient resources available during the contract period." There is no evidence in the record that suggests that the rule in question was promulgated to address a lack of resources. The agency maintains that OAR 461-135-1100(4) was promulgated as a penalty to be imposed against JOBS-disqualified individuals.

Claimant also draws our attention to a letter from the federal Department of Health and Human Services, Family Support Administration, Transmittal No. JOBS-FSA-AT-90-5 (March 13, 1990) to states administering the JOBS program that stated:

"A non-exempt participant who is sanctioned [*sic*] loses categorical eligibility for Medicaid because she is not receiving [ADC] during the period of the sanction. She may be otherwise eligible based on the State's Title XIX (Medicaid) plan."

Even if that statement were considered to be an authoritative statement of federal law, it does not support claimant's argument that OAR 461-135-1100(4) violates federal law. The letter does not establish that a state *must* provide Medicaid benefits to people who are disqualified from ADC because of failure to participate in the JOBS program, nor does it provide guidance about how a state is to decide who should be eligible for medical benefits notwithstanding a JOBS disqualification.[7]

Although we find claimant's arguments under federal law to be unpersuasive, we do not do so for the same reasons as did the hearings officer. The hearings officer concluded that,

"although ORS 414.025(2)(u), when coupled with ORS 414.032 would tend to grant medical assistance to those persons who are situated as claimant, to the extent that it did grant such assistance, it would be contrary to both the controlling federal regulations and the federal waiver."

The "controlling federal regulations" referred to in the order are 42 CFR §§ 435.100 through 435.170, which list different categories of Medicaid eligibility.[8] In reaching the conclusion

---

[7] Claimant also cites 42 USC § 1396a(a)(19), which provides that state medical plans must use safeguards to ensure that eligibility will be determined in a manner consistent with the best interests of the recipients. Claimant argues that OAR 461-135-1100(4) violates that law because the rule is not consistent with claimant's best interests. We do not interpret 42 USC § 1396a(a)(19) to require eligibility if eligibility is in an applicant's best interest.

[8] The order referred to 42 CFR §§ 435.100 though 435.231 as the "controlling federal regulations." 42 CFR §§ 435.100 through 435.170 comprise subpart B of 42 CFR chapter 435, which identifies the categories of need for which states are required to provide medical benefits. 42 CFR §§ 435.200 through 435.236 comprise

that granting medical assistance to JOBS-disqualified individuals would be contrary to 42 CFR §§ 435.100 through 435.170, the hearings officer relied upon the fact that "[t]he listing [of eligible individuals] does not include 'those who are not otherwise categorically needy, * * * but whose family income is less than the federal poverty level.'" (Omission in original.) That rationale ignores the fact that 42 CFR § 435.100 is one of the rules that the federal government waived to allow the state to implement the OHP.[9] That rule states that the subpart of which the rule is a part, 42 CFR §§ 435.100 through 435.170, "prescribes requirements for coverage of categorically needy individuals." With that rule waived, the state is not limited to providing benefits to people covered by the categories of need listed in 42 CFR §§ 435.110 through 435.170. Consequently, the fact that individuals similarly situated to claimant are not covered by those sections does not mean, as the hearings officer concluded, that the state is required to deny them medical benefits.[10]

The hearings officer also relied on the fact that the state's waiver application stated that JOBS-disqualified individuals would continue to be excluded from state-administered medical coverage. While that is true, the presence of that statement in the waiver application does not prevent the state from providing benefits to those individuals. Nowhere does the record indicate that the state's decision to continue to exclude JOBS-disqualified individuals from medical benefits was a condition of the federal government's decision to grant the waivers necessary to implement the OHP.[11] Under

---

subpart C of that chapter, which identifies the categories of need for which states may choose to provide medical benefits. The controlling regulations, therefore, are 42 CFR §§ 435.100 through 435.170.

[9] *See* Letter from William Toby Jr., Acting Administrator, Department of Health and Human Services, to Kevin Concannon, Director, Oregon Department of Human Resources 2 (March 19, 1993).

[10] If the hearings officer were correct, then the OHP could not be implemented because it makes eligible for Medicaid benefits a group of people who would not otherwise be eligible under existing federal law. A principal point of the federal waiver was to waive the requirements of federal law that deny states reimbursement·for Medicaid benefits provided to people whose sole claim to benefits is that their income is below the federal poverty level.

[11] Although we make no comment on its legal significance, claimant included in the record a letter from the Health Care Financing Administration of the Department of Health and Human Services that stated that the state could

federal law, the state may, if it chooses, extend a JOBS disqualification penalty to include the loss of medical benefits, but that is not a requirement. *See* 42 CFR § 435.113. Therefore, the statement in the waiver application that JOBS-disqualified individuals would continue to be excluded from medical benefits under the OHP does not provide a basis to conclude that giving those individuals medical benefits would violate federal law.

Thus, although we agree with the hearings officer's conclusion that OAR 461-135-1100(4) is consistent with federal law, we disagree with his conclusion that federal law *compels* that JOBS-disqualified people be excluded from OHP benefits. Therefore, we proceed to address claimant's final argument under state law.

Claimant argues that OAR 461-135-1100(4) is inconsistent with ORS 414.025(2)(u) and ORS 414.032. We note as a preliminary matter that the legislature amended ORS 414.025(2)(u) during the pendency of this appeal. *See* Or Laws 1995, ch 807, § 1. The amended statute now provides:

> "(2) 'Categorically needy' means, insofar as funds are available for the category, a person who is a resident of this state and who:
>
> "* * * * *
>
> "(u)  Is not otherwise categorically needy and is not eligible for care under Title XVIII of the federal Social Security Act *or is not a full-time student in a post-secondary education program as defined by the Department of Human Resources by rule*, but whose family income is less than the federal poverty level *and whose family investments and savings equal less than the investments and savings limit established by the department by rule*."

(Emphasis supplied.) We decline to determine the merit of claimant's appeal under the current version of ORS 414.025(2)(u) because the record is insufficient for that purpose. The arguments raised below and on appeal do not address the effect of the amendment on plaintiff's claim that she is eligible for benefits under the OHP. *See Jackson v. City*

continue to receive federal funds for the OHP if the state provided OHP benefits to JOBS-disqualified individuals.

*of Portland*, 33 Or App 133, 137, 576 P2d 21, *rev den* 283 Or 1 (1978).

Before proceeding to determine whether OAR 461-135-1100(4) is inconsistent with the former version of ORS 414.025(2)(u), we note that plaintiff's claim under that statute is not moot. That is because determination of claimant's eligibility for OHP benefits while the former version of ORS 414.025(2)(u) was in effect will have a practical effect on the rights of the parties. *See Brumnett v. PSRB*, 315 Or 402, 405-06, 848 P2d 1194 (1993) (case will not be dismissed as moot if the court's decision on the matter will have some practical effect on the rights of the parties). We turn now to the merits of claimant's argument under ORS 414.032 and the former version of ORS 414.025(2)(u) (1993).

■  Claimant argues that OAR 461-135-1100(4) impermissibly limits the population eligible for OHP benefits in contravention of the legislative policy expressed in ORS 414.025(2)(u) (1993) and ORS 414.032. If the rule exceeds the statutory authority of the agency or is contrary to a statute, the rule is invalid and, as a consequence, the order in this case must be reversed, because the order is based on the rule. *See* ORS 183.482(8).

The essence of claimant's argument is that the legislature intended, through the OHP, to provide medical assistance to all residents with incomes below the federal poverty level notwithstanding other programs that have the effect of interfering with that goal. In other words, claimant argues that the legislature intended for the policy of increased access to health care, advanced by the OHP, to transcend any policy advanced by other public assistance programs, such as the JOBS program. Claimant argues, therefore, that OAR 461-135-1100(4) is invalid because it precludes JOBS-disqualified people from obtaining OHP benefits when those people would otherwise qualify for OHP benefits on the basis of their income.

Claimant cites ORS 414.025(2)(u) (1993) and ORS 414.032 in support of her assertion that the agency may not

exclude people from receiving OHP benefits who would qualify for OHP benefits because their income is less than the federal poverty level. ORS 414.032 provides that "medical assistance shall be *made available* to persons who are categorically needy." (Emphasis supplied.) Due to the emphasized text, ORS 414.025(2)(u) (1993) and ORS 414.032 do not unambiguously indicate that the legislature intended that JOBS-disqualified people would be entitled to medical assistance if their income was below the federal poverty level. One could argue that medical assistance is "made available" to claimant so long as she participates in the JOBS program. Therefore, we turn to other relevant statutes to aid us in our inquiry.

ORS 411.060 gives the Adult and Family Services Division broad rule-making authority with regard to public assistance programs:

> "Subject to ORS 417.300 and 417.305, the Department of Human Resources through the Adult and Family Services Division shall administer and supervise all public assistance programs and adopt and enforce such rules as are necessary to assure full compliance with the terms of federal and state laws."

The legislature included medical assistance and ADC in the definition of "public assistance." ORS 411.010(3). Under ORS 411.060, therefore, the agency must adopt rules necessary to ensure full compliance with federal and state law as it applies to both the OHP and the JOBS program. In order to explore the nature of that authority, we turn to the legislature's statements of policy with respect to both of those programs.

ORS 414.036(2) describes the policy underlying the state's medical assistance program, which includes the OHP:

> "In order to provide access to health services for those in need, to contain rising health services costs through appropriate incentives to providers, payers and consumers, to reduce or eliminate cost shifting and to promote the stability of the health services delivery system and the health and well-being of all Oregonians, it is the policy of the State of Oregon to provide medical assistance to those individuals in need whose family income is below the federal poverty

level and who are eligible for services under the programs authorized by this chapter."

ORS 418.150, in turn, sets forth the policy underlying the JOBS program: to encourage individuals, including people such as claimant who live in households receiving ADC benefits, to attain self-care or self-support through both work-incentive programs and programs authorized under other provisions of law.[12]

OAR 461-135-1100(4) is consistent with the legislative policy expressed in ORS 418.150 because it advances the policy of encouraging self-sufficiency by penalizing people who choose not to participate in the JOBS program. Furthermore, the rule's denial of medical assistance in order to motivate people to participate in a work-incentive program is consistent with the broad range of discretion delegated to the agency to administer *all* public assistance programs. *See* ORS 411.060. Regardless of whether OAR 461-135-1100(4) is a valid exercise of agency authority in those respects, however, it must not violate the statutes that comprise the OHP.

In enacting the OHP, the legislature sought to extend medical assistance to people with incomes below the federal poverty level who were not able to qualify for medical assistance under existing criteria. *See* Or Laws 1989, ch 836, §§ 1, 19 (amending ORS 414.036 and 414.025(2)(u), respectively). The legislature did not intend to extend medical assistance to people such as claimant who could qualify for medical assistance under existing criteria but who had been disqualified on the basis of nonincome requirements. The structure of the amendments to ORS 414.025(2) indicates that the legislature intended the income-based category of

---

[12] ORS 418.150 provides:

"(1) The Legislative Assembly declares that it is in the public interest of the State of Oregon to assist appropriate individuals who are current, former or potential recipients of, or who are included in assistance households receiving, aid to dependent children to attain self-care or self-support.

"(2) The Legislative Assembly declares that it is in the public interest of the State of Oregon that all available manpower services, including those authorized under other provisions of law, be utilized to provide incentives, opportunities and necessary services to appropriate individuals in order that they may be employed in the regular economy, may be trained for regular employment and may participate in special work projects."

need set forth in ORS 414.025(2)(u) to supplement, rather than supplant, the other categories of need set forth in ORS 414.025(2)(a)-(t).[13]

That the legislature did not intend a subpoverty level income to be the sole criterion for medical assistance eligibility is also apparent in ORS 414.036(2). That provision states that it is the policy of the state "to provide medical assistance to those individuals in need whose family income is below the federal poverty level *and who are eligible for services under the programs authorized by this chapter.*" The legislature retained the emphasized language when it amended ORS 414.036(2) pursuant to the OHP. *See* Or Laws 1989, ch 836, § 1. The emphasized text demonstrates that the legislature intended there to be eligibility criteria other than sub-poverty-level income. Otherwise, the emphasized language would be superfluous. *See* 174.010 (statutes shall be interpreted to give effect to all text).

Given the text and context of ORS 414.032 and 414.025(2)(u) (1993) and the scope of the agency's rule-making authority under 411.060, we hold that OAR 461-135-1100(4) is not contrary to any statute on which claimant relies and is within the scope of the agency's delegated authority.

Affirmed.

---

[13] If the legislature had wanted to provide medical assistance to people in claimant's circumstances, it could have done so directly by modifying the JOBS program rather than indirectly, as claimant argues, by adding another category of need.