Argued and submitted December 2, 2010, reversed and remanded May 25, 2011

Tabitha PRICE,
*Petitioner,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

Oregon Department of Human Services
20080734; A141414

259 P3d 86

Sarah Radcliffe argued the cause for petitioner. On the brief was Deborah G. Weston, Oregon Law Center. On the reply brief was Sarah Radcliffe.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Claimant seeks review of an order of the Department of Human Services (the department) determining that claimant's household is ineligible for Temporary Assistance to Needy Families (TANF), a state and federally funded program that benefits children who are "deprived of parental support" because of, among other things, the unemployment of a parent. ORS 412.001(3)(a)(A). The department based its denial on its administrative rule providing that no deprivation occurs "based on unemployment" if the parent who is the primary wage earner has been or would be disqualified from receiving unemployment compensation. OAR 461-125-0170(4) (2007).[1] According to claimant, the statutes governing administration of the TANF program require the state to provide benefits to all two-parent families in which the primary wage earner is unemployed, with a single exception: families where that wage earner is unemployed because he or she refuses without good cause to accept employment. Claimant contends that, by creating an exception that disqualifies more households than are contemplated by the legislature, the rule exceeds the department's statutory authority and is therefore invalid. ORS 183.400; *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 687 P2d 785 (1984). Consequently, claimant argues, the order must be reversed because it is based on the rule.[2] We reverse.

Oregon's TANF program is an outgrowth of federal programs beginning in the 1930s with Aid to Families with Dependent Children (AFDC), 42 USC section 606(a). The United States Supreme Court's opinion in *Batterton v. Francis*, 432 US 416, 419, 97 S Ct 2399, L Ed 2d 448 (1977), provides a convenient history. Congress first created a welfare program for two-parent families in 1961, known as AFDC-UF, "to provide assistance in some cases where the

---

[1] The disputed rule has been amended. Because the 2007 rule was in effect when the department issued the order in this case, references throughout to the rules are to the 2007 version.

[2] The disputed order in this case was issued in December 2008. In 2009, the Legislative Assembly enacted a statute that unambiguously authorizes the department to deny TANF benefits "to a family in which a caretaker relative is disqualified from receiving unemployment insurance based upon the reason for the separation from employment." Or Laws 2009, ch 827, § 22.

unemployment of a parent causes dependent children to be needy." *Id.* States that elected to participate in the program were required to provide assistance where a needy child "has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary) of his father"; states opting to participate received matching funds from the federal government. *Id.* at 419.

In *Batterton*, the Supreme Court considered and rejected a challenge to a Maryland administrative rule, patterned after 45 CFR § 233.100(a)(1) (1976), a federal rule promulgated by the Secretary of Health, Education, and Welfare. That rule gave the states the option of disqualifying families where the primary wage earner was "unemployed * * * by reason of conduct or circumstances which result or would result in disqualification for unemployment compensation under the State's unemployment compensation law." *Id.* at 418 n 1. The Court in *Batterton* explained the limited standard for its review of the regulation, noting that Congress had expressly delegated to the Secretary the power to prescribe standards for determining what constitutes "unemployment" for purposes of AFDC-UF eligibility. Thus, the Court explained, Congress had entrusted the Secretary, not the courts, with the primary responsibility for interpreting the statutory term. The Court said that the Secretary's definition of "unemployment" could be set aside only if it exceeded the authority delegated to the Secretary by Congress. The Court further explained:

> "Of course, the Secretary's statutory authority to prescribe standards is not unlimited. He could not, for example, adopt a regulation that bears no relationship to any recognized concept of unemployment or that would defeat the purpose of the AFDC-UF program. But the regulation here at issue does not even approach these limits of the delegated authority. By allowing the States to exclude persons who would be disqualified under the State's unemployment compensation law, the Secretary has incorporated a well-known and widely applied standard for 'unemployment.' Exclusion of individuals who are out of work as a result of their own conduct and thus disqualified from state unemployment compensation is consistent with the goal of

AFDC-UF, namely, to aid the families of the involuntarily unemployed."

*Id.* at 428-29. The upshot of *Batterton*, then, is that the Secretary did not exceed the authority of federal statutes when he gave states the option to exclude families based on the primary wage earner's disqualification for state unemployment benefits. The parties do not contend, and we do not suggest, that the Supreme Court's holding in *Batterton* is authority for the department's rule in this case, but it nonetheless provides relevant background in two ways. First, it demonstrates that Oregon *could* adopt the disqualification of households such as claimant's; second, it demonstrates that the Oregon legislature has not done so, even though it has adopted the other optional disqualification, listed in the same section of the federal regulation, allowing exclusion where the primary wage earner has rejected employment. 45 CFR § 233.100(a)(3)(ii).

Since 1961, Oregon has participated in the various two-parent public assistance programs that Congress has authorized, and TANF, created by Congress in 1996, is the current version. Under ORS 412.006, any "dependent child" who is living in a home that meets the standards of care and health fixed by the rules of the Department of Human Services "shall be granted" aid pursuant to TANF. ORS 412.001(3)(a) defines a "dependent child" as a needy child "[w]ho has been deprived of parental support or care by reason of the death, continued absence from the home or physical or mental incapacity, or unemployment or underemployment, of a parent." ORS 412.034 states that aid under ORS 412.006 "shall not be granted with respect to, or on behalf of, a dependent child living with an unemployed parent if, and for as long as, the unemployed parent of such child refuses without good cause to accept employment in which the unemployed parent is able to engage[.]" The statutes do not define "unemployment" or "unemployed" for purposes of TANF.

The department has extensive rulemaking authority to implement public assistance programs. For example, ORS 411.060 gives the department broad rulemaking authority with regard to all public assistance programs:

> "[T]he Department of Human Services shall:
>
> "(1)   Administer and supervise all public assistance programs;
>
> "(2)   Determine eligibility for all public assistance programs; and
>
> "(3)   Adopt and enforce rules necessary to ensure full compliance with federal and state laws relating to public assistance programs."

Under ORS 411.070, the department must "by rule fix statewide uniform standards for all public assistance programs and effect uniform observance thereof throughout the state." ORS 412.006(8) provides that "[t]he department shall adopt rules to carry out the provisions of [TANF]." ORS 412.049(2) further requires that the department "[m]ake such rules and regulations and take such actions as may be necessary or desirable for carrying out ORS 412.001 to 412.155 and 418.647."

The department has developed rules for implementation of TANF. OAR 461-125-0010 provides that, to be eligible for TANF, a dependent child must be "deprived." The rule defines "deprivation" in conformity with the statutory definition of a "dependent child," as "the loss of parental support or care because of the absence, death, incapacity, unemployment, or underemployment of a parent." The rule at issue in this case, OAR 461-125-0170, provided, "Deprivation based on the unemployment or underemployment" of the primary wage earner "exists if all the following are true:

> "(1)   A child lives with two parents.
>
> "(2)   The [primary wage earner] is unemployed or underemployed.
>
> "(3)   The [primary wage earner] is not participating in a labor dispute.
>
> "(4)   *The [primary wage earner] is not unemployed from their most recent job for reasons that would or do result in disqualification for [unemployment compensation] benefits in Oregon.*"

(Emphasis added.)

Claimant's household consists of herself, her boy-friend Sims, and their daughter, born September 3, 2007. Sims was the primary wage earner for the family. In February 2008, he was discharged for misconduct connected with work and, for that reason, disqualified from receiving unemployment benefits. Claimant applied for TANF benefits. Because claimant's daughter lives with both of her parents, claimant's claim is governed by the rules applying to two-parent households, and "deprivation" must be based on either the incapacity of a parent, or the unemployment or underemployment of the primary wage earner. The record does not show that either parent is incapacitated. The department found that Sims was the primary wage earner and was unemployed at the time of the application for reasons that disqualified him from receiving unemployment benefits. Accordingly, the department denied the application for benefits.

On judicial review, claimant contends that the department erred in denying her application for TANF benefits because the department's rule denying eligibility when the primary wage earner has been discharged for any and all reasons that disqualify him from unemployment benefits is inconsistent with the statutes creating the entitlement to TANF, and the department therefore exceeded its authority in promulgating the rule. Claimant's primary focus is on ORS 412.001(3)(A)(a), the statute defining a dependent child as one who has been deprived of parental support by reason of the parent's unemployment, and on ORS 412.006, which requires that TANF benefits "shall be granted" to "*any* dependent child." (Emphasis added.) In claimant's view, those provisions together require that the state pay TANF benefits when the dependent child's primary wage earning parent is unemployed and that there is only one statutorily recognized exception: ORS 412.034, which expressly excludes from eligibility the child of a parent who is unemployed and "refuses without good cause to accept employment in which the unemployed parent is able to engage." In claimant's view, if the legislature had intended to authorize further restrictions on the eligibility for benefits based on unemployment—including those in OAR 461-125-0170(4)—it would have so

stated expressly and, in the absence of a statutorily created exception, there is no authority for the department's rule.

The state counters that the fact that the legislature has expressly described one exclusion from eligibility does not mean that the department lacks authority to develop others. The state notes that ORS 412.161 sets forth the legislature's policy in enacting TANF and includes the statement that,

> "because federal law now requires recent employment and active work search to be eligible for federal funds for public assistance to two-parent unemployed families, the availability of federal funds helps those families who are trying hardest to help themselves be self-supporting."

In the state's view, the exclusion from eligibility when the primary wage earner has been discharged for a reason that disqualifies the individual from unemployment is perfectly consonant with the legislature's stated policy. Further, the state points to the many statutory provisions that authorize the department to implement assistance programs through the adoption of administrative rules, and it asserts that the disputed rule is well within the authority provided by those statutes.

We find the department's arguments to be unpersuasive. The text of the TANF statutes is emphatic and unambiguous: Aid under

> "the [TANF] program *shall* be granted under this section to *any* dependent child who is living in a home meeting the standards of care and health fixed by the rules of the Department of Human Services and who is a resident of the State of Oregon, if a parent or caretaker relative with whom the child is living is a resident of the State of Oregon."

ORS 412.006(1) (emphasis added). A "dependent child," in turn, is a needy child "who has been deprived of parental support * * * by reason of * * * unemployment or underemployment of a parent." ORS 412.001(3)(a). We agree with the department that the TANF statutes grant broad rulemaking authority to the department, including rules that determine eligibility for assistance programs. ORS 411.060(2). That fact, however, does not address, much less dispose of, the

issue in this case, which is whether a particular rule is within that grant of authority, however broad it might otherwise be.

If the legislature had simply created TANF and done nothing more, the department's argument based on the general, broad grant of authority would have considerable force, and the absence of a more express grant would be insignificant. The legislature, however, has done more; it has stated in a statute—indeed, in the first section of the first substantive TANF statute—the unambiguous mandate described above. ORS 412.006(1). Moreover, that mandate is not merely aspirational; compare, for example, ORS 412.161, which lists legislative findings, all of which are couched in nonoperational terms:

"The Legislative Assembly finds:

"(1)   That the provision of public assistance to children dependent by reasons of unemployment of parents would help keep families together and reduce hardship in times of high unemployment;

"(2)   That the lack of public assistance to two-parent unemployed families does not produce significant financial savings for the State of Oregon since family break-up increases the number of single-parent families receiving public assistance;

"(3)   That children in two-parent unemployed families have needs as urgent as those of children in single-parent unemployed families;

"(4)   That the provision of public assistance to two-parent unemployed families would provide access to medical care for these families, health being one of the prerequisites to seeking and maintaining employment;

"(5)   That because federal law now requires recent employment and active work search to be eligible for federal funds for public assistance to two-parent unemployed families, the availability of federal funds helps those families who are trying hardest to help themselves be self-supporting; and

"(6)   That additional funds need to be made available in the temporary assistance for needy families program to effectuate this policy."

Further, by enacting one exception to the mandate—ORS 412.034, disqualifying households where the unemployed primary wage earner refuses employment without good cause—the legislature has signaled that, if exceptions are to be made, the legislature will make them itself.

The department acknowledges much of the above, but maintains that OAR 461-125-0170 is not an exception to the legislative mandate; rather, it is a definition of the term "unemployment."

That argument suffers from a decisively fatal flaw. "Unemployment" is expressly and concisely defined in the rule immediately following the disputed rule: a primary wage earner is "unemployed or underemployed if their monthly earned income is less than the countable income limit for their need group size." OAR 461-135-0180. The challenged rule, by its phrasing and its operation, is an *exception* to the rule that children in households with an unemployed primary wage earner—as defined by the department itself—are to be granted assistance:

> "Deprivation based on the unemployment or underemployment of the [primary wage earner] exists if all of the following are true: * * *

> "* * * * *

> "(4) The [primary wage earner] is not unemployed from their *most recent job* for reasons that would or do result in disqualification for U[nemployment] C[ompensation] benefits in Oregon."

(Emphasis in original.) The department points to nothing in the TANF statutes or in the principles of administrative law that authorizes it to promulgate a rule that is inconsistent with the emphatic and unambiguous mandate to provide aid to any child who is deprived of care due to the unemployment of the primary wage earner parent.

The department nonetheless argues that our opinion in *Brannon v. AFSD*, 141 Or App 564, 575, 920 P2d 161 (1996), *rev den*, 325 Or 45 (1997), should guide our analysis here. In *Brannon*, the claimant sought review of an order of the Adult and Family Services Division that had denied her benefits under the Oregon Health Plan (OHP) for failure to

comply with the provisions of an administrative rule, contending that the rule was inconsistent with state and federal law. The pertinent version of the administrative rule, OAR 461-135-1100(4), denied OHP benefits to people who had been denied cash benefits under the Aid to Dependent Children (ADC) program—the predecessor to TANF— because they had failed to participate in the Job Opportunities and Basic Skills (JOBS) program. The claimant chose not to participate in the JOBS program so that she could continue an educational program that did not qualify as an alternative to the JOBS program. When the claimant stopped receiving ADC benefits, the department denied benefits on the basis of its administrative rule. The claimant argued that OAR 461-135-1100(4) impermissibly limited the population of persons otherwise eligible for OHP benefits by creating additional criteria for eligibility that did not appear in the statutes. In particular, she pointed to ORS 414.032, which provided that "medical assistance shall be *made available* to persons who are categorically needy." *Id.* at 575 (emphasis to statutory language added in *Brannon*). The court stated that, due to the emphasized language, the statute did not

> "unambiguously indicate that the legislature intended that JOBS-disqualified people would be entitled to medical assistance if their income was below the federal poverty level. One could argue that the medical assistance is 'made available' to claimant so long as she participates in the JOBS program. Therefore, we turn to other relevant statutes to aid us in our inquiry."

*Id.* The "other relevant" statutes to which the court turned included ORS 414.036(2), a statute underlying the state's medical assistance program, which provided:

> "In order to provide access to health services for those in need, to *contain rising health services costs* through appropriate incentives to providers, payers and consumers, to reduce or eliminate cost shifting and to promote the stability of the health services delivery system and the health and well-being of all Oregonians, it is the policy of the State of Oregon to provide medical assistance to those individuals in need whose family income is below the federal poverty level and who are *eligible for services under the programs authorized by this chapter.*"

(Emphasis added.) One program "authorized by this chapter" was the JOBS program. That language, the court emphasized, "demonstrates that the legislature intended there to be eligibility criteria other than sub-poverty-level income." *Brannon*, 141 Or App at 577.

*Brannon* and the present case do not deal with the same statutory scheme, the same text, or the same evident legislative intent. First, even if we accept that "medical assistance shall be made available" is "not unambiguous[ ]," and "it could be argued" that it means something other than what it appears to mean, the language in the TANF statutes—"Aid pursuant to [TANF] shall be *granted* under this section to *any dependent child*"—is not susceptible to such interpretation. It cannot "be argued" that aid is "granted" to "any dependent child" when it is not granted to some dependent children. Further, *Brannon* uses the supposed ambiguity of "made available," not to decide the issue, but to justify examining other statutes. Those statutes have no counterpart in the TANF laws. Nothing in the TANF statutes expresses a policy to take into account "rising costs." Indeed, in 2007, the Oregon legislature overhauled the TANF program and, in the process, *repealed* a statute that made TANF assistance to dependent children of unemployed parents contingent on the availability of "funds expressly appropriated and specifically available" for the program. *Former* ORS 418.185 (2005), *repealed by* Or Laws 2007, ch 861, § 23.

More significantly, the policy statement in the statutory program at issue in *Brannon* referred to the department's authority to impose criteria from other "programs authorized by this chapter." ORS 414.036(2). Nothing in the TANF statutory scheme authorizes, expressly or by implication, application of criteria imported from any other statutory programs, much less from a program such as unemployment compensation that derives from an entirely different statutory scheme and is administered by an entirely different agency. We are not persuaded that *Brannon* provides guidance here.

Reversed and remanded.